
FILED
MAR 22 2006
T.S. McGREGOR, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS & TERESA HODGES,<br>　　　　　Debtor. | NO. 03-05721-JAR7 |
| THOMAS & TERESA HODGES, husband and wife,,<br>　　　　　Plaintiffs,<br>vs.<br>ARMADA fdba COMMERCIAL COLLECTION SERVICE, a Washington corporation,<br>　　　　　Defendant. | ADV. NO. 05-80029-JAR7<br><br>MEMORANDUM OPINION |

Thomas and Teresa Hodges (Debtors) are husband and wife. They filed a Chapter 7 bankruptcy case in 2003. They employed the law firm of Carlson, McMahon & Sealby, PLLC (CMS) to handle their case. CMS contends that Debtors owe it money for handling the bankruptcy. CMS assigned Debtors' bill to Armada for collection. The relationship between these three parties is rather incestuous. Armada is represented by their attorney CMS, the assigning creditor. Mr. Hodges, at the time he employed CMS was an employee of Armada. This employment was terminated for unknown reasons and under unexplained circumstances. The parties have a history with each other.

Armada pursued collection actions on the CMS bill against the Debtors. The Debtors filed this adversary proceeding contending Armada's action violated the discharge injunction and provisions of the Fair Debt Collection Practice Act (FDCPA).

Debtors causes of action based on the discharge violations are "core proceedings". Debtors causes of actions based on the FDCPA are "related to" proceedings. The parties

MEMORANDUM OPINION /1

have consented to this court making final judgments in this adversary proceeding on both "core" and "related to" issues. (Hodges complaint ¶3; Armada's answer ¶3; 28 U.S.C. §157(c)(2)).

I. The Fee Agreement.

This case arises out of a dispute over attorneys fees incurred in handling a Chapter 7 bankruptcy case. The debtors contend that the fee agreement was $700.00 attorney fees plus the filing fee for complete handling the case. CMS contends the arrangement was for $750.00 attorney fees plus filing fee, for limited services, with post petition services to generally be handled on a per hour basis.

The first issue that must be decided is what was the agreement between the parties. This problem is compounded by the fact that there was no written agreement between the parties as to what services were to be provided.

The general rule in bankruptcy court (and the district court for that matter) is that once a lawyer has undertaken a bankruptcy case, the attorney needs court permission to terminate that representation. LBR 9010-1(b)(5) of the Bankruptcy Court of E.D. Washington; LR 83.2(d) of U.S. District Court E.D. Washington. The fact that the attorney is not being paid for its services may not be sufficient cause for termination of representation. This is particularly true in bankruptcy cases, where the persons represented are often not able to pay more than a limited amount. The filing of the bankruptcy case cuts off the ability to recover for fees generated pre-petition. It thus becomes critically important to define what services are to be supplied in exchange for the funds paid.

The Washington State Bar Association Rules of Professional Conduct require that a fee agreement demonstrate that the client has received a reasonable and fair disclosure of the elements of the fee agreement. RPC 1.5. Recently the Bar Association has allowed a lawyer to limit the scope of representation if the limitation is reasonable and the client consents after consultation. RPC 1.2(c). The rules of the Bankruptcy Court for the

MEMORANDUM OPINION /2

Eastern District of Washington allow "limiting" or "unbundling" services in certain instances by defining what services must be performed in connection with a flat fee arrangement in handling a Chapter 13 case. LBR 2016(e). These rules require a written fee arrangement.

It may be possible to limit the services contracted for in handling a chapter 7 case but this must be done specifically and with a clear showing that the client consents to this arrangement. This creates a real problem of proof when the attorney is seeking to enforce an oral agreement limiting services in a bankruptcy case in derogation of the general rule.

This litigation was triggered when CMS instituted legal action through an assignment for collection of unpaid legal fees and expenses. Thomas Hodges testified that the fee agreement was CMS would furnish all the legal services required to handle the Chapter 7 case for a fee of $700.00, plus filing fee. CMS disputes that this was the arrangement contending that the $700.00 paid by debtors was only a portion of the $750.00 attorney fees that were to be paid and that the debtors were also to pay an additional $200.00 for the court filing fee. The $750.00 attorney fee, CMS contends was only to cover fees through the first meeting of creditors and that any additional post filing fees would be charged at $150.00/hour.

Thomas Hodges had a specific and detailed recollection of the conversation in which the fee agreement was reached. CMS was handicapped in their evidence in that neither of the attorneys handling the matter had any specific recollection of the conversation at which the agreement was made. Both testified relying on their offices practices and policies in regard to handling of bankruptcy matters. The reliability of this testimony was put in question by a showing of inconsistent practice in other cases. More damaging was a statement signed by Mr. Sealby representing that the firm had not received any money from the debtors in this case. In fact Debtors had paid $700.00 cash. The testimony of Thomas Hodges was more convincing and the court finds that CMS agreed to handle debtors' bankruptcy including post petition services for $700.00 attorney fees. CMS may have understood the arrangement differently but that was not manifest

MEMORANDUM OPINION /3

in the pre-filing dealings between the parties.

CMS argues that this sort of an arrangement would have been unreasonable. Perhaps that would be true if the post filing services needed by the Debtors were unusual or extraordinary in some way and beyond the contemplation of the parties. Here, however, the post filing services are within what an attorney could reasonably and commonly expect in the handling of a Chapter 7 bankruptcy; responding to the U.S. Trustee inquiries, dealing with stay relief requests, and discussion of reaffirmation agreements. The fee arrangement was not unreasonable.

The Court concludes that the attorney services provided by CMS were all within the $700.00 agreed fee agreement which the parties negotiated pre-bankruptcy and which the Debtors paid prior to the filing.

That however is not the end of the matter. The Court now turns to CMS's attempts to collect funds in excess of the $700.00 attorneys fees contracted.

## II. The Billing History.

By January 23, 2003, the Debtors had paid the agreed on $700.00. The bankruptcy pleadings had been prepared by CMS, who advised Debtors they were transferring the $700.00 held in the firm trust account in payment for work performed. (Exh. 1).

The debtors bankruptcy case was not filed with the court until July 3, 2003. The reason for this delay is unclear. At the time of filing, CMS filed with the court a form captioned "Statement of Attorney for Petitioner Pursuant to Bankruptcy Rule 2016(b)." This statement was signed by Robert W. Sealby and dated July 3, 2003 (Exh. FF). It stated that the debtors had agreed to pay $750.00 as fees in connection with this case and that none of it had been paid and that $750.00 was due and payable. This statement was untrue. As previously found by this Court, CMS had contracted for attorney fees of $700.00 for handling the debtors' bankruptcy case and this $700.00 had been paid.

After the filing of the bankruptcy CMS received several inquiries from attorneys

MEMORANDUM OPINION /4

representing the Debtors' creditors and from the United States Trustee's office. By letter dated August 5, 2003, Robert Sealby advised the debtors of these inquiries. The letter included the following language:

> As you know, you retained me to prepare and file on your behalf a Chapter 7 Bankruptcy petition. Our agreement was for me to prepare the petition, file it and attend the Creditor's Meeting with you for purposes of obtaining a discharge.

The letter then went on to advise the debtors that they would be billed at the rate of $150 per hour for any additional work. This arrangement was contrary to the debtors' understanding of their agreement with CMS. Thomas Hodges testified that he was "shocked" to see this letter. Nevertheless he decided to wait and see how things turned out and deal with it later. The evidence shows that this disagreement on the terms of employment was not brought to CMS's attention until over a year later, after the matter had been assigned for collection.

CMS billed the debtors $232.95 on their August 4, 2003 billing statement. These charges included .6 of an hour or $45.00 for correspondence, and $232.95 for disbursements, which included $200.00 for the bankruptcy filing fee plus charges for postage and copies.

CMS's August 31, 2003 billing statement to Hodges included charges for 4.4 hours of attorney time. The entries included $150.00 for one hour - "Dictate letter 27 notice of stay and letter to clerk to file". It also included $300.00 for 2 hours - "Attend Meeting of Creditors". The remaining 1.4 hours charged was for correspondence with the U.S. Trustee, creditor representatives and correspondence to the debtors. This billing statement also included $21.27 of disbursements for copies and postage. It is interesting to note that despite the fact that Mr. Sealby in his letter to debtors of August 5, 2003 admitted that attendance at the Creditors Meeting was included in the fee arrangement, CMS was charging for it as additional work.

CMS issued another billing statement to the debtors on October 1, 2003. It

MEMORANDUM OPINION /5

included charges for $150.00 for one hour of attorney time attributable to communications with various creditors and the debtors. It also sought reimbursement of $1.71 for postage.

CMS issued another billing statement to the debtors dated October 31, 2003. It included a charge of $15.00 for .1 of an hours work on correspondence plus $3.17 for postage and copies. The balance now due from the debtors was stated to be $1,129.10. It was this amount which CMS assigned to Armada for collection over a year later.

There are any number of problems with these billings. The most glaring problem is that the court has found that CMS agreed to handle Debtors' bankruptcy case for $700.00 attorney fees plus the filing fee. There was nothing unusual in the debtors case which would justify charges in addition to the fee agreed upon. CMS was attempting to collect extra for attendance at the first meeting of creditors, which Mr. Sealby admitted was to be covered by the debtors original payment. It charged for sending out 27 notices of stay which was needless duplication of notice to the creditors given by the court. Even CMS's own expert witness, Mr. Steinberg, valued their post petition services at $495.00. In summary, even if the court accepted CMS understanding of the contract, CMS was overcharging. Their attempt to collect for postage and copies which would ordinarily be part of overhead absent a contrary agreement, is questionable.

CMS's billing also includes a charge for $200.00, for reimbursement of the bankruptcy filing fee. The Debtors had agreed to pay this filing fee in addition to the $700.00 for attorneys fees. The Debtor had not paid the filing fee at the time their case was filed. Thus, CMS advanced this filing fee. Federal Rules of Bankruptcy Procedure 1006(a) requires that the filing fee must be paid at the time of filing of the original petition, except for a limited exception not applicable to this case. Federal Rule of Bankruptcy Procedure 1006(b)(3) requires the filing fee to be paid in full before the debtor may pay any attorney for services rendered in connection with the case. CMS should have deducted the $200.00 filing fee from the $700.00 it had already received. Instead, it advanced the filing fee. Prepetition attorneys fees and advances are dischargeable in the bankruptcy

MEMORANDUM OPINION /6

case. In re Jostrem, 253 F3d 438 (9th Cir. 2001). Rittenhouse v. Eisen, 404 F3d 395 (6th Cir. 2005).

As one judge has observed:

> Prudent counsel will not agree to pay the bankruptcy filing fees and file the bankruptcy case without a retainer because the debtor's obligations to pay for pre-bankruptcy legal services will be discharged in the bankruptcy case.

In re Leitner, 221 B.R. 502, 503 (Bankr Ct. Neb. 1998).

The Debtors were granted a discharge and a final decree was entered in their case on October 16, 2003. Therefore, it appears that nothing was owed by the debtors to CMS after October 16, 2003, the date of the entry of Debtors' discharge by the Bankruptcy Court.

Nearly one year later, on October 8, 2004, CMS assigned the debtors' account to Armada for collection. Immediately upon assignment, Armada issued a collection notice. (Exh. 3). This notice indicated a principal balance of $1,129.10, the amount shown due on CMS's October 31, 2003 billing statement. It also included a sum of $140.03 designated "Creditor Int:" for a total amount due of $1269.13. It is unclear how this $140.03 was calculated. Interest at 12% for one year on $1129.10 would be $135.49. This notice was mailed to debtors October 11, 2004.

On November 2, 2004, Armada sent a letter to the debtors demanding payment of the assigned debt. This letter was sent in a windowed envelope addressed to Thomas Hodges III. Appearing in the window of this envelope and clearly visible is the language "You have a total of $1,278.04 owing in our office at . . . . " (Exh. 7).

On November 9, 2004, Armada filed a lawsuit in the Chelan County District Court CY4-1856 against the debtors for collection of the CMS debt in the sum of $829.10, interest of $148.75 and costs and disbursements of $61.00. (Exh. 8).

On November 15, 2004, Armada records reflect their receipt of debtors undated dispute of the CMS bill. (Exh. 4). Thomas Hodges took the position that the debtors' agreement with CMS was that it would handle the debtors complete bankruptcy for a

MEMORANDUM OPINION /7

$700.00 attorney fee plus the $200.00 filing fee. All of the hourly charges contained in the CMS billing statement plus postage and copies were covered by that $700.00 fee which had been paid before the bankruptcy. Thomas Hodges admitted that the $200.00 filing fee had not been paid pursuant to the agreement but asserted that obligation had been discharged in the bankruptcy.

Robert Sealby responded to the issues raised by the debtors in a letter written to Armada on November 24, 2004. (Exh. 5). In this letter he admits that the charges for attendance at the first meeting of creditors were included in the flat fee rate. Mr. Sealby relies on the Statement of Attorney form filed with the bankruptcy to justify charging for additional work. There are a number of problems with this position. First the statement as completed and filed is admittedly wrong. It indicates debtors have paid nothing prior to the date of the statement, July 3, 2003, when all concerned concede the debtors paid $700.00. Second, it is not signed by the debtors. Third, it identifies in the form language "services rendered or to be rendered include the following . . .." Its language does not purport to limit the services to those enumerated in the form. The court concludes that the defenses of the billing included in that November 24, 2006 letter are not well taken.

Armada accepted Mr. Sealby's letter as validation of the debt, and so advised the debtors by letter dated November 30, 2004. (Exh. 6). Both debtors responded to the Armada letter by letter dated December 8, 2004. (Exh. 9). The Hodges suggested that Armada consult independent counsel in regard to its position in the matter. They also called Armada's attention to the two alleged violations of the Fair Debt Credit Practices Act. The first violation was disclosure to third parties which resulted from the debt collection language visible in the November 2, 2004 mailing. The second violation was the initiation of Chelan County District Court action # CY4-1856 on November 9, 2004, within the 30 day validation period.

Evidently in response to this letter, Armada dismissed # CY4-1856. However on December 14, 2004 Armada filed another suit against the debtors in Chelan County District

MEMORANDUM OPINION /8

Court, cause # CY4-2006 (Exh. 10). In this suit Armada sought collection of $829.10, $123.57 interest and $61.00 costs. The summons in this case was served on Thomas Hodges on December 31, 2004.

Having detailed the facts at length, the Court now turns to the various causes of action alleged.

### III. Violation of the Discharge Injunction.

Debtors argue that Armada with full knowledge of the discharge injunction 11 U.S.C. §524(a) willfully violated it and should be held in contempt. Debtors base this argument on the fact that Armada was seeking to collect the $200.00 bankruptcy filing fee which CMS advanced. This court finds this $200.00 debt was a pre-petition debt which had been discharged by Debtors bankruptcy. Armada's action was in violation of that discharge injunction.

The court must determine what penalty will flow for that violation. It is clear that part of Debtors' agreement with CMS was that Debtors would pay the $200.00 filing fee. Less than a month after the Debtors filed bankruptcy by Mr. Sealby's letter of August 5, 2003, they became aware of the disagreement with CMS over the terms of employment. Yet they failed to raise this issue to CMS for over a year after the debt had been assigned to Armada and it had started collection action. When Armada became aware that the charge was disputed, it sought legal advice from CMS. Armada needed independent counsel at this time, CMS clearly had a conflict of interest. CMS erroneously advised Armada that the filing fee was not discharged. It is unclear what, if any authority was relied upon in support of this advice. Armada relied on that erroneous advice and continued with its collection activity. Given the Debtors delay in raising the issue and Armada's reliance on incorrect legal advice, the Court finds that Debtors suffered only nominal damage as a result of violating the discharge injunction. The Court finds Debtors damages for the discharge injunction violation to be $1.00, plus an award of Debtors' reasonable attorneys fees and costs.

MEMORANDUM OPINION /9

## IV. Violation of the Federal Debt Collection Practice Act (FDCPA).

Debtors argue that Armada violated the FDCPA by attempting to collect an amount not owed, by continuing collection activity after it received a written dispute, and by improperly disclosing credit information. The court will consider these claims in that order.

### A. Collection of an Amount Not authorized by Agreement.

15 U.S.C.§1692f(1) states that the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law is a violation of the FDCPA.

Armada was attempting to collect charges which were not authorized by the agreement between the Debtors and CMS. In addition, it was attempting to collect the $200.00 filing fee advance which was discharged by the Debtors' bankruptcy. These actions are all violations of §1692f(1).

### B. Continuing Collection Activity after Receiving a Written Dispute.

15 U.S.C. §1692g(b) provides that if the consumer notifies the debt collector in writing within thirty days that any portion of the debt is disputed, the collector shall cease collection of the debt until the collector obtains verification of the debt. From the record it is unclear whether the Debtors notified Armada they were disputing the bill within the thirty day period. The collection notice dated October 8, 2004 was post marked October 11, 2004. (Exh. 3). The Debtors "Dispute on Account # 1183889" was undated. (Exh.4). An Armada employee, Cindy Gagne, testified that Armada's records reflect that it received Debtors request for verification on November 15, 2004. This is beyond the thirty day period. But even if the request for verification was timely, it does not appear Armada violated the law. Upon receipt of Debtors' Dispute, Armada sought verification from Sealby and apparently took no collection action while awaiting verification. In fact, Armada dismissed the original lawsuit against Debtors which had been filed on November 9, 2004. Debtors argue that Armada violated the law by filing that first lawsuit within the thirty day

period. This argument is misplaced as a debt collector is free to sue within thirty days, it just must cease its efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor. See Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997.) There is no evidence that it took any collection action during the period between receipt of Debtors' Dispute and November 30, 2004 when it mailed Debtors' CMS documentation to validate the debt. Debtors have not proved a cause of action under this section of the FDCPA.

C. Improper Disclosure of Credit Information.

15 U.S.C.§1692f.(7) states that it is a violation of FDCPA to communicate with a consumer regarding a debt by post card. 15 U.S.C.f.(8) states that using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business. The purpose of these two sections is clearly to prevent sensitive information about debt collection from being disclosed to third parties. Debtors Exhibit 7 shows that Armada disclosed sensitive information by sending a window envelope where anyone seeing that envelope could see the statement "You have a total of $1,278.04 owing at this . . .". The Court finds that Armada violated both 1692f.(7) and 1692f.(8) by mailing this window envelope disclosing this language.

D. Armada's Affirmative Defenses.

15 U.S.C.§1692k. States that a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted by avoid any such error. Armada is claiming this defense. The Court finds that Armada did not maintain procedures reasonably adapted to avoid the FDCPA violations found in this case. Armada had a duty to seek independent, objective legal advice, untainted by personal interest. Given the

obvious facts of this case, CMS does not meet that test. Armada could not in good faith rely on the legal advice of CMS given their apparent conflict of interest. Armada should have sought independent legal counsel.

Besides:

> Reliance on advice of counsel or a mistake about the law is insufficient by itself to raise the bona fide error defense. "s 1692k(c) does not immunize mistakes of law, even if properly proven." <u>Rutyna v. Collection Accounts Terminal, Inc.</u>, 478 F. Supp. 980 (N.D. ILL. 1979).

<u>Baker v. G.C. Services Corp.</u>, 677 F. 2d 775, 779 (9th Cir. 1982).

Neither has Armada shown that it has maintained procedures reasonably adapted to avoid the impermissible disclosure of confidential information in the window of the envelope when communicating with the Debtors. The court finds that the bona fide error defense is not applicable to the facts of this case.

E. <u>Damages for Violation of FDCPA</u>.

Pursuant to 15 U.S.C. §1692k any debt collector who fails to comply with the provisions of the FDCPA is liable for damages. This provision allows for recovery of actual damages and in the case of an individual, additional damages not exceeding $1,000.00. In the case of a successful action the court may award reasonable attorneys fees and costs.

The Hodges in this case have sought recovery for emotional damages. Mr. Hodges has worked in the debtor collection business for many years. He is very familiar with the statutory and regulations governing debt collection practices. He is apparently much more familiar with this area of the law than CMS, his former attorneys, at least as evidenced by its actions in this case. Mr. Hodges is the most sophisticated of plaintiffs in this area of law. The Hodges claim damages for emotional damage caused by Armada's actions. The history of this case indicates the Debtors were not as forthcoming with CMS as they might have been. The evidence in support of emotional damages to the Hodges is unpersuasive.

MEMORANDUM OPINION /12

The evidence supporting actual damages are inconclusive beyond the time and effort expended by the Hodges in prosecuting this action. The statute allows for an award of damages to individuals in addition to the actual damages. Thomas and Teresa Hodges should each be awarded damages in the sum of $1,000.00. In addition they are entitled to an award of their reasonable attorneys fees and costs incurred in this adversary proceeding.

## V. Conclusion

Thomas and Teresa Hodges are each awarded damages against Armada in the sum of $1.00 for the violation of the discharge injunction.

Thomas and Teresa Hodges are each awarded damages against Armada for violation of the FDCPA in the sum of $1,000.00.

In addition, the Hodges are entitled to recovery of their reasonable attorneys fees and costs incurred in this adversary proceeding. Their counsel is directed to prepare an application for award of attorney fees and costs in this matter as well as a proposed judgment.

Pursuant to F.R. Bkry Procedure 7052, this memorandum opinion constitutes the Court's findings of fact and conclusions of law in this matter.

DONE this 22 day of March, 2006.

_____
Bankruptcy Judge

MEMORANDUM OPINION /13